**Lewis R. Landau** (CA Bar No. 143391)
**Horgan, Rosen, Beckham & Coren, LLP**
23975 Park Sorrento, Suite 200
Calabasas, CA 91302
Email: LLandau@hrbc.com
Voice and Fax: (888) 822-4340

Attorney for Debtor

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>Terrance Alexander Tomkow,<br><br>    Debtor.<br><hr>Terrance Alexander Tomkow,<br><br>    Objecting Party,<br><br>vs.<br><br>Kenneth Barton,<br><br>    Claimant. | Case No.:  2:13-bk-19712 WB<br>[Adv. No.:  2:13-ap-01989 WB]<br><br>Chapter 13<br><br>**REPLY IN SUPPORT OF SUBORDINATION AND OBJECTION TO BARTON CLAIM**<br><br>Date:   November 5, 2013<br>Time:  2:00 p.m.<br>Place:  Courtroom 1375; Judge Brand<br>          US Bankruptcy Court<br>          255 E. Temple Street, 13th Floor<br>          Los Angeles, CA 90012 |

Terrance Alexander Tomkow ("Debtor") herein files the Debtor's reply to the opposition filed by Kenneth Barton ("Barton") to Debtor's motion seeking subordination and disallowance of Barton's proof of claim. The Debtor's reply is contained in the following memorandum of points and authorities.

///

///

///

///

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## BARTON'S CLAIM IS SUBJECT TO MANDATORY SUBORDINATION AND DISALLOWANCE

Debtor has moved for mandatory subordination of Barton's claim pursuant to 11 U.S.C. § 510(b). Under the express statutory terms of § 510(b), a claim for damages arising from the sale of a security of Debtor's affiliate is subject to mandatory subordination in Debtor's case and becomes a claim for "common stock." As Debtor is an individual and has no equity securities, Barton's claim is unenforceable and must be disallowed under 11 U.S.C. § 502(b)(1). As such, Debtor's motion should be granted.

Barton opposes the motion on essentially two grounds. First Barton contends that there is no "nexus of causal connection" between his monetary proof of claim and Barton's shareholder status. Second, Barton argues that mandatory subordination is a collateral attack upon his Los Angeles Superior Court ("LASC") judgment. Barton's first argument ignores every aspect of the LASC's statements of decision which first restored Barton's common stock and then transmuted that stock into a money judgment. There is no legitimate question that Barton's claim is a damage claim arising from the sale of securities as Barton's claim is virtually identical to the claim mandatorily subordinated in the Ninth Circuit's seminal Betacom decision. *See*, In re Betacom of Phoenix, Inc., 240 F.3d 823 (9th Cir. 2001) ("Betacom").

Barton's second argument is likewise meritless. There is no "collateral attack" when the Bankruptcy Court applies the Bankruptcy Code to a state court judgment. Mandatory subordination is consistent with the expectations of the creditor, here Barton, who sought to recover his 6,016,500 shares of common stock in Rpost International Limited ("RIL") and was granted a money judgment in lieu of stock restoration. Barton cannot and does not deny that RIL is an affiliate of Debtor. Thus, both of Barton's arguments fail to rebut the mandatory subordination of Barton's claims under § 510(b).

For all these reasons, the Court should grant the Debtor's motion.

///

### 1. **Barton's Claim Indisputably Arises from a Securities Damage Claim.**

Barton's primary defense to the Debtor's subordination motion is that Barton's claim against the Debtor is not a damage claim arising from the sale of RIL stock. Barton's position is captured in the following argument:

> Moreover, it is clear that Barton's pre-petition shareholder status – as a former shareholder whose ownership interest was divested by Debtor's fraud years ago – shares no nexus of causal connection with an existing shareholder of RIL; Barton has long been divested of his interest therein.

Opposition 6:20-22. Unfortunately, Barton's argument is detached from the reality of the LASC's statements of decision leading to entry of the August 30, 2013 judgment. The LASC's statements of decision make it indisputably clear that Barton's claim arises solely from his failure to receive RIL shares. As such, and under the clear holding of the Ninth Circuit's <u>Betacom</u> decision, the claim must be subordinated to common stock status and therefore disallowed.

#### a. The LASC Statements of Decision.

Barton's proof of claim attaches the two statements of decision entered by the LASC in advance of the August 30, 2013 judgment. The analysis of Barton's claim must be based on the statements of decision, which Barton attempts to ignore in his opposition. Per the LASC's August 3, 2013 statement of decision, the defendants (RIL, Debtor and others) were ordered to restore Barton's stock in RIL:

> Therefore, the defendants are ordered to restore to plaintiff 6,016,500 shares of RPost International common stock. If the defendants have made further transfers of their own stock to other entities since the resignation of Barton from Rpost International, the same process must take place for his shares so that they retain the same benefit and potential value as the 6,016,500 shares previously owned by Khan.

Motion at 21.

Thus, there is no question that the LASC's original statement of decision restored Barton to his common stock position in RIL based on Barton's claims for conversion thereof. After the LASC's original statement of decision, additional proceedings related to the assessment of punitive damages occurred and on June 13, 2013 the LASC amended its original statement of decision as follows:

> At the conclusion of the punitive damage portion of the trial, it became obvious to the court that the assets and character of RPost International Limited had changed dramatically, and to simply restore Mr. Barton's shares of stock as provided for in its Statement of Decision would not be consistent with the intent of the court's original ruling. For this reason, returning the 6,016,500 shares to Mr. Barton would undoubtedly spark an endless round of post-judgment motions and additional lawsuits, one of which is already pending. In addition, without an evaluation of the common shares of stock owned by Mr. Barton, the court would be deprived of a meaningful compensatory damage calculation, thus complicating the court's determination on the propriety of the appropriate award of punitive damages.
>
> As set forth in page 7 of the court's original Statement of Decision, although respectful of the background and testimony of both experts, the court ultimately rejected plaintiff's expert's (Jaime D' Almeida) opinion that the common shares of stock had a value in excess of $14 million, as well as defendants expert's (Kevin Henry) opinion that said shares had a value of zero dollars. To assist the court in determining a proper value of the relevant shares, the court invited both counsel to provide names of potential experts for consideration of appointment pursuant to Evidence Code section 730. C. Paul Wazzan, Ph.D. was ultimately chosen by the court from the names provided by both parties.
>
> ……
>
> With the assistance of Dr. Wazzan, his reports and testimony, while keeping in mind the testimony of both plaintiff's and defendants' experts, the court is now prepared to ascribe a value to the common shares of RPost International stock as of June 30, 2009. ***The court adopts Dr. Wazzan's opinion and concludes the common stock has a value of $0.64 per share. Since plaintiff owned 6,016,500 shares, the monetary value equals $3,850,560. The court modifies its original Statement of Decision and determines the plaintiff is entitled to a monetary judgment for the value of his converted shares against Terrance Tomkow, Zafar Khan, and RPost International Inc. in the amount of $3,850,560 less $10,500 for a net award of $3,840,060.***

Motion at 27-28 (emphasis added).

Thus, there can be no legitimate argument that Barton's claim is not a monetary claim based on the value of Barton's claim to RIL common stock. This is a classic claim for damages arising from the sale of securities of an affiliate and is subject to mandatory subordination under section 510(b).

///

///

///

///

-4-

### b. Cases Under § 510(b) Uniformly Subordinate Barton Type Claims.

Section 510(b) requires the subordination of three distinct categories of claims: (1) a claim arising from rescission of a purchase or sale of a security of the debtor; (2) a claim for damages arising from the purchase or sale of a security of the debtor; and (3) a claim for reimbursement or contribution allowed under 11 U.S.C. § 502 on account of either (1) or (2). *See*, In re Geneva Steel Co., 281 F.3d 1173, 1177 (10th Cir. 2002). This case involves a damages type subordination claim. The Fifth Circuit summarized the law concerning § 510(b) subordination of securities related damage claims as follows:

> "Any discussion of section 510(b) must begin with the 1973 law review article authored by Professors John J. Slain and Homer Kripke, entitled *The Interface Between Securities Regulation and Bankruptcy—Allocating the Risk of Illegal Securities Issuance Between Securityholders and the Issuer's Creditors,* 48 N.Y.U. L.Rev. 261 (1973)." Granite Partners, 208 B.R. at 336. Congress relied heavily on the Slain and Kripke article when drafting § 510(b). *See* In re Betacom of Phoenix, Inc., 240 F.3d 823, 829 (9th Cir.2001). "Effective November 1978, the Bankruptcy Reform Act inserted the subordination principle first articulated by Slain and Kripke into bankruptcy law" through the enactment of § 510(b). Geneva Steel, 281 F.3d at 1177.
>
> The subordination thesis in the Slain and Kripke article was premised upon the allocation of certain risks between investors and creditors. *See* Granite Partners, 208 B.R. at 336. "[B]oth investors and creditors accept the risk of enterprise insolvency," but to differing degrees, as reflected in the absolute priority rule.[5] *Id.* While the creditor anticipates repayment of a fixed debt, the investor anticipates a potentially unlimited share of future profits. *Id.* In exchange for this "unique right to participate in the profits," the investor risks the loss of his capital investment, which provides an "equity cushion" for the repayment of creditors' claims. *Id.* "In contrast, investors alone bear the risk of illegality in the issuance of securities" because it would be improper to reallocate this risk to creditors who (1) never bargained for an equity position in the debtor and (2) extended credit to the debtor in reliance on the equity cushion provided by the investors. *Id.*
>
> Notwithstanding this emphasis in the legislative history on rescission and damages claims arising from securities fraud, the Ninth Circuit concluded that "[t]here is nothing in the Slain and Kripke analysis to suggest that Congress's concern with creditor expectations and equitable risk allocation was limited to cases of debtor fraud." Betacom, 240 F.3d at 829. Rather, Congress's larger concern was the effort of disaffected stockholders to recapture their investments from the debtors, regardless of the exact nature of their claims. *See* Granite Partners, 208 B.R. at 337.

In *Betacom,* the Ninth Circuit rejected the plaintiffs' argument that § 510(b) only applies to securities fraud claims. *See* 240 F.3d at 828-29. The court ultimately held that a claim arising from the debtor's failure to deliver stock pursuant to a merger agreement was subject to mandatory subordination. *See id.* at 831-32. By bargaining with the debtor to receive equity instead of debt, the plaintiffs entered the transaction with greater financial expectations than a creditor, *see id.* at 830, and the unsecured creditors presumably relied on the plaintiffs' contribution to the equity pool when extending credit to the debtor. *See id.* at 830-31.

The Second, Third, and Tenth Circuits have adopted the broad reading of the damages category adopted by the Ninth Circuit in *Betacom.* The Third Circuit has held that a claim arising from breach of a provision in a stock purchase agreement requiring the issuer to use its best efforts to register stock and ensure that it is freely tradable was subject to mandatory subordination. *See* In re Telegroup, Inc., 281 F.3d 133, 136, 141-42 (3d Cir.2002). The Tenth Circuit has held that a claim arising from post-issuance fraud of the debtor, which caused an investor to hold rather than sell his securities, was subject to mandatory subordination.[6] *See* Geneva Steel, 281 F.3d at 1180-81. The Second Circuit has held that a claim arising from breach of a stock exchange provision in a termination agreement was subject to mandatory subordination. *See* In re Med Diversified, Inc., 461 F.3d 251, 256 (2d Cir.2006). Unlike this case, these circuit court cases involve stockholder claims arising from failure to deliver stock (*Betacom*), failure to register stock (*Telegroup*), failure to exchange stock (*Med Diversified*), and fraudulent inducement to retain stock (*Geneva Steel*). They are relevant, however, to the extent they clarify the scope and policy of § 510(b).

For purposes of the damages category, the circuit courts agree that a claim arising from the purchase or sale of a security can include a claim predicated on post-issuance conduct, such as breach of contract. *See* Telegroup, 281 F.3d at 140, 142. They also agree that the term "arising from" is ambiguous, so resort to the legislative history is necessary. *See id.* at 138; Geneva Steel, 281 F.3d at 1178; Med Diversified, 461 F.3d at 255. For a claim to "arise from" the purchase or sale of a security, there must be some nexus or causal relationship between the claim and the sale. *See* Telegroup, 281 F.3d at 138. Further, the fact that the claims in the case seek to recover a portion of claimants' equity investment is the most important policy rationale. *See id.* at 142; Geneva Steel, 281 F.3d at 1179. "When an investor seeks *pari passu* treatment with the other creditors, he disregards the absolute priority rule, and attempts to establish a contrary principle that threatens to swallow up this fundamental rule of bankruptcy law." Granite Partners, 208 B.R. at 344. When a claimant elects to take an equity stake in the debtor, he becomes bound by the choice to trade the relative safety of a fixed return for the "upside potential of shareholder status." *Med Diversified,* 461 F.3d at 256.

*See*, In re SeaQuest Diving, L.P., 579 F.3d 411, 420-422 (5th Cir. 2009).

A close review of the facts of the Betacom case reveals striking similarity to the facts at bar. Betacom involved bankruptcy monetary claims for breach of a merger agreement wherein the underlying litigation claims, including a claim for conversion, were based on the failure to convey

-6-

1    shares of stock.  In an amended complaint, the claimants sought damages in lieu of the promised

2    stock.  <u>Betacom</u>, 240 F.3d at 826.  The Ninth Circuit held subordination was mandatory under the

3    damages category of § 510(b).

4           The claims in <u>Betacom</u> are effectively the same as Barton's claims herein.  Pursuant to the

5    LASC's statement of decision, Barton was originally restored his 6,016,500 shares of common

6    stock in RIL.  The LASC then amended its statement of decision to award Barton a money

7    judgment based on the value of Barton's entitlement to 6,016,500 shares of common stock in RIL.

8    Barton's argument that there is no "nexus or causal connection" between his money judgment and

9    his receipt of RIL common stock simply defies the record.  Barton's claim is not only causally

10   connected to his receipt of RIL common stock, there is no other basis for it.  Thus, Barton's

11   monetary claim in Debtor's bankruptcy case is subject to mandatory subordination.

12          Barton cites several cases wherein mandatory subordination was denied on the grounds

13   that the monetary claim did not arise from the sale of securities.  *See, e.g.*, <u>In re Am. Wagering,

14   Inc.</u>, 493 F.3d 1067 (9th Cir. 2007).  However, Barton's cases involve promissory note based

15   claims that do not have a sufficient connection to the sale of securities so as to be deemed to arise

16   therefrom.  The key inquiry is whether the claimant bargained for shareholder or creditor status at

17   the inception of the transaction.  <u>Id.</u>, at 1072.  Barton cites no case wherein a money judgment

18   based on the failure to deliver common stock is not subject to mandatory subordination.  The

19   promissory note cases have nothing to do with Barton's claim.  Barton's entire claim is premised

20   on the failure to receive his common shares in the Debtor's affiliate, RIL.  The LASC originally

21   restored those shares to him and later transmuted the shares into a money judgment.

22          For all these reasons, Barton's claim must be subordinated and disallowed.

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

**2. There is no Collateral Attack on the Judgment.**

With no citation to any statute or opinion for authority, Barton argues that the Court cannot subordinate and disallow Barton's claims because doing so constitutes a collateral attack on the LASC judgment. The argument is meritless and is refuted by the Tristar case Barton cites earlier in his brief. *See*, O'Donnell v. Tristar Esperanza Props., LLC (In re Tristar Esperanza Props., LLC), 488 B.R. 394 (9th Cir. B.A.P. 2013) ("Tristar").

In Tristar, the claimant made the same "collateral attack" argument Barton makes herein. The BAP rejected the claim on the grounds that, "[n]or is chapter 11 an impermissible collateral attack on the validity of a state court judgment. The amount that is owed is not questioned. The issue is priority and terms of payment." Id., at 405-406.

Barton cannot legitimately dispute that his claim against the Debtor arises from the sale of a security of an affiliate, RIL. Whether couched as a claim for conversion, fraud or other relief, the LASC first sought to restore Barton's shares and then monetized the relief by entering a money judgment. Under the plain terms of § 510(b), Barton's claim is subject to mandatory subordination. The motion should be granted.

## II.

## CONCLUSION

Based on all the foregoing, the Debtor requests that the Court subordinate and disallow Barton's claim and grant such other and further relief as is just and proper under the circumstances.

Dated: October 29, 2013                    **Horgan, Rosen, Beckham & Coren, LLP**
                                           **Lewis R. Landau**

                                           By:*/s/ Lewis R. Landau*
                                           Lewis R. Landau
                                           Attorneys for Debtor

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

23975 Park Sorrento, Suite 200
Calabasas, CA 91302

A true and correct copy of the foregoing document entitled (*specify*): _____
 Reply in Support of Subordination and Objection to Barton Claim _____
_____
_____
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _10/29/2013_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☑ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _10/29/2013_____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.
 Judge Brand, US Bankruptcy Court, 255 E Temple Street, Suite 1382, Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 10/29/2013 | Lewis R. Landau | /s/ Lewis R. Landau |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012* **F 9013-3.1.PROOF.SERVICE**

| In re: Tomkow | | CHAPTER: 13 |
|---|---|---|
| | Debtor(s). | CASE NUMBER: 2:13-bk-19712 WB |

**ADDITIONAL SERVICE INFORMATION (if needed):**

NEF Service List (category I):

Henry Ben-Zvi on behalf of Defendant RMAIL LIMITED , rachel@ben-zvilaw.com
Henry Ben-Zvi on behalf of Defendant RPOST COMMUNICATIONS, LTD. , rachel@ben-zvilaw.com
Henry Ben-Zvi on behalf of Defendant RPOST INTERNATIONAL LIMITED , rachel@ben-zvilaw.com
Nancy K Curry (TR) ecfnc@trustee13.com
Nancy K Curry (TR) on behalf of Trustee Nancy K Curry (TR) ecfnc@trustee13.com
Nicolas A Daluiso on behalf of Creditor BANK OF AMERICA, N.A.
ndaluiso@robinsontait.com, ssears@robinsontait.com;mhunter@robinsontait.com;ncarson@robinsontait.com;
kshenefield@robinsontait.com
Lewis R Landau on behalf of Debtor Terrance Alexander Tomkow LLandau@HorganRosen.com
Lewis R Landau on behalf of Defendant Terrance Alexander Tomkow LLandau@HorganRosen.com
Lewis R Landau on behalf of Interested Party Zafar David Khan LLandau@HorganRosen.com
Lewis R Landau on behalf of Plaintiff Terrance Alexander Tomkow LLandau@HorganRosen.com
Bonni S Mantovani on behalf of Creditor BANK OF AMERICA, N.A. cmartin@pralc.com
Jeannette Marsala on behalf of Creditor BANK OF AMERICA, N.A. jmarsala@pralc.com, cmartin@pralc.com
Danette Murrell on behalf of Creditor BANK OF AMERICA, N.A. danette.murrell@bankofamerica.com
Cassandra J Richey on behalf of Interested Party Bank of America, N.A., c/o Prober & Raphael
cmartin@pralc.com
Scott E Shapiro, Esq on behalf of Creditor Thomas Burke scott.e.shapiro.esq@gmail.com
Scott E Shapiro, Esq on behalf of Plaintiff 126736 CANADA, INC. scott.e.shapiro.esq@gmail.com
Scott E Shapiro, Esq on behalf of Plaintiff George Martin scott.e.shapiro.esq@gmail.com
Scott E Shapiro, Esq on behalf of Plaintiff Thomas Burke scott.e.shapiro.esq@gmail.com
Kquemura Smith on behalf of Creditor BANK OF AMERICA, N.A. kquemura.r.smith@bankofamerica.com
Kendrick D Stribling on behalf of Creditor BANK OF AMERICA, N.A. kendrick.stribling@bankofamerica.com
United States Trustee (LA) ustpregion16.la.ecf@usdoj.gov
Kristin S Webb on behalf of Interested Party Courtesy NEF bknotice@rcolegal.com
Portia Worsham on behalf of Creditor BANK OF AMERICA, N.A. portia.worsham@bankofamerica.com
Philip A Zampiello on behalf of Creditor Kenneth Barton philipz@mkzlaw.com, PatrickM@mkzlaw.com;
MichaelK@mkzlaw.com;VanessaB@mkzlaw.com
Philip A Zampiello on behalf of Plaintiff Kenneth Barton philipz@mkzlaw.com, PatrickM@mkzlaw.com;
MichaelK@mkzlaw.com;VanessaB@mkzlaw.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                                                                              **F 9013-3.1**