PATRICK C. MCGARRIGLE, ESQ., SBN 149008
MICHAEL J. KENNEY, ESQ., SBN 192775
PHILIP A. ZAMPIELLO, ESQ., SBN 198723
McGARRIGLE, KENNEY & ZAMPIELLO, APC
9600 Topanga Canyon Boulevard, Suite 200
Chatsworth, California  91311
PH: (818) 998-3300    FAX: (818) 998-3344

Attorneys for Creditor/Adversary Plaintiff
Kenneth Barton

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| IN RE:<br><br>    TERRANCE ALEXANDER TOMKOW,<br><br>    Debtor, | Case No. 2:13-bk-19712-WB<br><br>**CREDITOR KENNETH BARTON'S OBJECTION TO DEBTOR'S "NEW MATTER" REPLY AND BARTON'S SUR-REPLY THERETO; MEMORANDUM OF POINTS AND AUTHORITIES.**<br><br>Date:    November 5, 2013<br>Time:   2:00 p.m.<br>Dept.:   Courtroom 1375<br>            Edward Roybal Federal Building, 255 East Temple Street, Los Angeles, CA |

---

1

**OBJECTION TO DEBTOR'S "NEW MATTER" REPLY AND SUR-REPLY**
8681-010\BK\Barton – Obj To Debtor's "New Matter" Reply And Sur-Reply – Tomkow

Creditor Kenneth Barton ("**Barton**") objects to Debtor Terrance Tomkow's ("**Debtor**") "new matter" reply, largely devoted to new case cites and new assertions which Debtor chose not to raise in his conclusory, bare bones "objection" to Barton's Proof of Claim, and provides his Sur-Reply thereto.

## I. LONG ON SWEEPING CONCLUSIONS BUT DETACHED FROM THE FACTS AND THE CONTROLLING LAW, DEBTOR'S SUBORDINATION OBJECTION REPLY, TIED TO NEW ARGUMENTS AND NEW CASE CITES, REMAINS MERITLESS AND SHOULD BE OVERRULED.

As predicted in Barton's Opposition to the Claim Objection (p. 8:17-19), Debtor has sandbagged its scant substantive assertions until his Reply and, then, only marginally attempted to address the governing standard for consideration of a subordination claim by propping up previously uncited/undiscussed cases (and materially misstating their purported "similarity"). Compounding the improper tactic, Debtor then proceeds to wholly misrepresent Barton's positions in the Opposition, misrepresent Barton's fraud/conversion claim in the Superior Court and misrepresent the LASC's ruling and sequence. What is certain, as well, is that Debtor's tactic **(a)** underscores that the subordination plea held no water in the first place, and **(b)** Debtor was hoping that its "last," but entirely new, word on these subjects could throw sand in the Court's eyes and allow the law to be misapplied to a case and claim that is anything but a Section 510(b) subordination case. Such tactic is transparently manipulative, has no place in these proceedings and is unavailing on its purported merits.

Debtor's new-matter Reply is stunning in misrepresentations of the law and the facts and continued flat out disregard of the controlling legal authority (as if Judge Mund's ruling and analysis *in In Re Orange County Nursery* is legal kryptonite that Debtor must avoid at all costs to hope to mislead this Court into applying Section 510(b)). It's no surprise that Debtor's Reply does not (a) address any of the cases cited in the Objection, or (b) even attempt to rehabilitate the few cases cited in his own Objection to the Claim,

which were patently inapposite after even a cursory review.

*First*, the new-matter Reply newly cites older cases, mis-states their application with sweeping, factually erroneous conclusions and then errantly asserts that they compel subordination. For example, Debtor now claims that <u>In Re Betacom of Phoenix, Inc</u>. (9th Cir. 2001) 240 F.3d 823 (a case not discussed by Debtor in his Objection) ("<u>Betacom</u>"), is somehow "strikingly similar" or "virtually identical" to the case at bar; except that, of course, it is not and not even close. After juxtaposing, here, Debtor's already adjudicated ***personal liability*** for fraudulent converting – through forgery and corporate records, fabrication and corporate records destruction – Barton's shares at least as of June 2009 (*which divested Barton of his shareholder interest four years <u>before the petition was filed</u>*) against the <u>Betacom</u> facts, it takes a nanosecond to conclude that the inapt <u>Betacom</u> fact pattern has not one iota of symmetry to Barton's fraud/conversion claim in the State Court Action against Debtor or the underlying substantive timeline in this case. For example, and dispositively, in <u>Betacom</u>:

**a)** the claimants were all <u>existing shareholders of the corporate debtor at the time of the bankruptcy</u> and were alleging breach of a merger agreement that would have transmuted their existing shares in one corporation into the shares of another (an obvious "sale" of shares case);

**b)** the corporate claimants there had entered into a voluntary share swap agreement in connection with a merger agreement the claimants approved and ***were expecting to benefit from – as investors***, not as creditors; and

**c)** the debtor proved that creditors of the debtor had extended credit to debtor in reliance on the "equity cushion" arising from the claimants' continued ownership of shares and approval of the share swap/merger transaction.

In sharp and diametrically opposed contrast, the facts here demonstrate that Section 510(b) and <u>Betacom</u> does not apply:

**a)** Barton's shareholder interest in RIL was completely divested through Khan and Tomkow's fraudulent conversion (wrongful, involuntary taking of his shares) at least 4

years before the petition (and, if Khan and Tomkow are held to their representations to the LASC, they unwound Barton from RIL's issued share rolls as early as October 2006, nearly 7 years before the petition was filed (Ex. J hereto[1], Khan Trial Testimony in State Court Action, March 8, 2012, p. 81:10 – p. 82:20). Hence, as of the petition date and, in fact, for nearly 4 years prior thereto, Barton's shareholder interest was effectively converted and divested leaving barton only as a creditor, not an equity holder;

**b)** Barton's share interest was stripped and divested from him in secret through an elaborate fraudulent ruse (which Debtor notably does not deny or dispute in his Reply or any other papers filed with this Court) at least four (and, according to Debtor, 7) years ago and Debtor neither asserts nor can prove that Barton had any right at any time since at least June 2009 (or, according to Debtor, since October 2006) to participate in any upside in RIL's business (another missing key requirement in Debtor's effort to pigeon-hole Section 510(b) into this case). Here, Barton was <u>not</u> a party to any share sale agreement (as in *Betacom*); instead, Debtors Khan and Tomkow's theft of Barton's shares, also estops them from asserting Barton had any "upside" interest. When Debtors Khan and Tomkow fraudulently converted Barton's Shares, <u>years ago</u>, through their fraudulent activities, Barton became a creditor of the Debtors and RIL and lost his equity status with no upside rights; and

**c)** Debtor has not identified any investors or creditors of RIL that granted RIL credit based on any "equity cushion" ties to Barton's share interest, which is no surprise since Debtors stripped and divested Barton of his shares at least four years ago (or (based on their own testimony) some 7 years ago). Further, Debtors transferred all of RIL's assets into RPost Communications, Ltd. (in addition to other assets already transferred into RMail Limited, another Debtors' - controlled entity) *in March 2011*, 2+ years before the petition was filed and Barton was never a shareholder in RPost Communication. As even the *Betacom* Court held (at p. 831): "if the stock is never issued to an investor, then future creditors do not rely on the investor's contribution in making their decisions to extend

---

[1] Attached hereto as Exhibit "J" is a true and correct copy of excerpts of the trial testimony of Debtor Zafar Khan in the State Court Action, on March 8, 2012.

4

**OBJECTION TO DEBTOR'S "NEW MATTER" REPLY AND SUR-REPLY**

credit and the creditors do not deserve to move ahead of the investors in the bankruptcy line." Here, Debtor fails in its burden to explain and present any evidence of any such creditors (in Debtor's bankruptcy) that extended credit to RIL or Khan based on Barton's Shares which Debtor himself contends were removed from RIL's rolls in as early as October 2006 (and, as the Court found, in June 2009). Barton was stripped of any investor, equity upside many, many years before the petition was filed and there was no "equity cushion" created by Barton Shares a) in RIL, since Debtors fraudulently converted those shares 4 years ago and divested Barton therefrom and from the shareholder rolls, and b) in RComm, since Barton does not hold shares in that entity.

Conveniently, but tellingly, omitted from the Reply is also this key fact: The *Betacom* Court granted subordination because, <u>and only after</u>, applying the two-prong test (cited in Barton's Opposition to the Objection (and recently clarified and re-stated by Judge Mund in *In Re Orange County Nursery*)), the claimants in that case were still shareholders, were claiming damages from a pending share swap/merger transaction and other creditors/investors of debtor relied on the equity cushion from the claimants shares in the debtor company. Hence, while it is not surprising that Debtor's Reply never gets to these key, dispositive facts (particularly since Debtor continues to ignore Judge Mund's decision which denied subordination where even minority shareholders were deemed to be creditors, not equity holders), the flat out misrepresentation of the *Betacom* case and false "correlation" to the instant case is wholly untenable and well beyond zealous advocacy.

***Second***, Barton's status as a creditor, as opposed to an equity holder, is not subject to good faith dispute, and Debtor's new clinging to the State Court's SOD is factually and legally unavailing. Debtor's continued refusal to address the *In Re Orange County Nursery* cases looms large as, there, even *existing* minority shareholders' claims were held **<u>not</u> to be subordinated as the shareholders were deemed creditors:** As the Court stated: **"The Minority should be treated as a creditor because once the Superior Court Order was issued, the Minority effectively stopped sharing in the debtor's potential upside....In the bargain inherent in the capital structure, the Minority is far more**

**like Creditors who are paid ahead of equity in exchange for no expectation of sharing in any upside, than it is like equity. Its right to payment was fixed in the sense that it would never be paid more than the Judgment."** *In Re Orange County Nursery* (USBC CD Cal. 2012) 484 B.R. 219, 224-225 (Emphasis Added). Here, years before the Trial Court's SOD, RSOD and Judgment, Barton was long ago (2009) (and, according to Debtor and estopping him from asserting otherwise, in 2006) divested and stripped of his shares and shareholder status and Debtor does not (and could never) assert that Barton was enjoying or could enjoy any "upside" in RIL given Debtor's long before (the petition filing) conversion of Barton's shares. Barton sought $14M-$16M in fraud and conversion, etc. damages at trial in 2012; while the Trial Court initially decided (due to his initial questions regarding the reconciliation of the valuation evidence submitted by all sides) to invoke his own proposed property restoration option (to restore Barton's converted shares) (which initial SOD nonetheless did not *ipso facto* cause RIL to allow Barton any shareholder rights or status or interest in any upside), when the Court learned at the punitive damages phase that Khan/Tomkow had engaged in multiple asset transfers leaving RIL an empty shell, the Court decided (<u>again, all pre-petition</u>) otherwise: "At the conclusion of the punitive damage portion of the trial, it became obvious to the court that the assets and character of RPost International Limited had changed dramatically, and to simply restore Mr. Barton's shares of stock as provided for in its Statement of Decision would not be consistent with the intent of the court's original ruling." RSOD, p. 2:1-4 (Ex. 15 to the Motion to Convert). The Court then concludes that Barton is "entitled to a <u>monetary judgment</u> for the value of his converted shares." *Id.*, at p. 3:8-9. Hence, Barton's shares (and equity and upside rights) were never actually restored and Debtor, conspicuously, presents no evidence that Barton's shareholder status was actually ever restored by RIL (i.e., that RIL gave Barton notice of meetings or accountings, or that he could participate in any "upside" of an entity that Debtor Khan and Tomkow had gutted to prevent any recovery by Barton in the first place). **Instead, Barton was at all times since the conversion four+ years ago (at the least) and at the time of the petition filing, a**

**creditor, not an equity holder**. Hence, as Debtor's multiple filings repeatedly ignore the applicable two-prong test and ignore *In Re Orange County Nursery*, the only legally sustainable conclusion is that Section 510(b) does not apply to Barton's Claims and the "subordination" objection and Debtor's complaint are not well taken.

*Third*, Debtor new assertions never answer the other key question – even if Debtor could overcome the prohibition of subordination in this case, what is the point of subordination here? The absence of any RIL non-equity creditor (a) filing any claim in Debtor's bankruptcy, and (b) hypothetically prejudiced by Barton's claim proceeding without subordination, further demonstrates that there is no "equity cushion" evidence demonstrated by Debtor here and subordination, even if it could be proven to make any sense in Debtor's existing (but which should be duly converted to Chapter 7) Chapter 13 case (with no lower class of unsecured creditors behind Barton), no good cause exists to proceed with an "unnecessary complex act" (as Judge Mund noted in *In Re Orange County Nursery*).

*Fourth*, Debtor's new citation to the *In Re Granite Partners* and *In Re Geneva Steel* cases, too, make zero sense and do not support subordination in the slightest. Both cases are inapposite: each involved claims *by existing shareholders* against the debtor corporation for fraudulently inducing the shareholders to hold onto and not sell their shares. Again, Debtor cites inapposite cases and undertakes no effort to explain – what is inexplicable: how the cases bear specifically on the facts of the case at bar. Continually citing off the mark cases, providing no specific factual correlation and then making sweepingly false characterizations is hardly indicative of a persuasive position.

## II. DEBTOR'S "DISALLOWANCE" PLEA ALSO FAILS AS DEBTOR HAS ALREADY BEEN ADJUDGED PERSONALLY LIABLE FOR HIS FRAUDULENT CONVERSION OF BARTON'S SHARES IN RIL.

Debtor's new-matter Reply misrepresents Barton's positions, wholly ignoring controlling California law that holds that Debtor is personally responsible for his fraudulent conversion of Barton's Shares. In what is now three different filings, Debtor

has never cited any authority – though his counsel's pronouncements quizzically purport to be authoritative – that holds that a Debtor, liable under California law, for (and has been adjudged liable for) fraudulently converting shares, is nevertheless somehow absolved from that liability under Section 510(b) (assuming Debtor could first demonstrate that the two-prong test under *Orange County Nursery* was satisfied). Ironically, having asserted the Full Faith and Credit Act compels (albeit incorrectly) abatement of Barton's adversary action, Debtor now contends that same State Court determination as to Debtor's personal liability should be disregarded (again with no authority). Debtor's assertions are contradictory and untenable and no basis for any disallowance exists here.

Moreover, Debtor predictably ignores the other controlling distinguishing factors: in all of the cases Debtor has cited, all of the debtors are corporations and all of the claimants are existing shareholders who are alleged to be seeking to get their equity interests transmuted into debt/creditor claims. What Debtor never cites is any subordination case (upholding subordination) where the debtor (a) is an individual, (b) who has, pre-petition, already been adjudicated liable for his personal fraudulent conversion, many years before the petition was filed, of another shareholder's shares in a company, (c) Debtor's conversion occurred 4-7 years pre-petition, and (d) the creditor was long ago denied an upside in the corporation and there are no "equity cushion" issues. The entirety of Debtor's subordination/disallowance objection is without support under the law or the facts and should be denied.

### III. DEBTOR MISUNDERSTANDS THE COLLATERAL ATTACK ON THE STATE COURT JUDGMENT PROHIBITION.

Without having met the "subordination" test cited in the Opposition and controlling authority, Debtor then misunderstands the prohibition on his collateral attack on the State Court Judgment. Here, and without any authority at all, Debtor complains that Barton's Claim should be "disallowed" against Khan; however, the Trial Court in the State Court Action, relying on a litany of controlling authorities (cited in Barton's

Opposition/Response to the Objection to POC), held that Debtors are personally and jointly and severally liable for their fraudulent conversion of Barton's Shares. Debtor ignores the case law – all of it – cited in the Opposition and simply re-states that "disallowance" is required; Debtor's presentation is unpersuasive and not tethered to any controlling authority. Instead, Debtor attempts to escape his personal liability adjudicated in the State Court by asking this Court to hold (contrary to the judgment of the State Court) that Debtor is now not liable for having converted Barton's Shares. Debtor's obvious collateral attack is clear as a blue sky and, under controlling authority, is prohibited and dooms the Objection and Complaint.

For all of the foregoing reasons and those set forth in the Opposition to the Objection to Claim, Barton respectfully requests that (a) the Objection to Claim be overruled and denied, and (b) the Court dismiss Debtor's Adversary Complaint for Subordination and disallowance of claim.

Dated: November 1, 2013

McGARRIGLE, KENNEY & ZAMPIELLO, APC

By: /s/ Patrick C. McGarrigle

Patrick C. McGarrigle, Esq.
Michael J. Kenney, Esq.
Attorneys for Creditor Kenneth Barton

# EXHIBIT J

```
 1            SUPERIOR COURT OF THE STATE OF CALIFORNIA
 2                  FOR THE COUNTY OF LOS ANGELES
 3    DEPARTMENT NO. SW B      HON. STUART M. RICE, JUDGE
 4
 5
      KENNETH BARTON,              )
 6                                 )
                    PLAINTIFF,     )
 7                                 )
             VS.                   )   SUPERIOR COURT
 8                                 )   CASE NO.
      R. POST INTERNATIONAL LIMITED, ET AL.,)  YC061581
 9                                 )
                    DEFENDANT.     )
10    _____)

11
12
13           REPORTER'S TRANSCRIPT OF PROCEEDINGS
14
15                  THURSDAY, MARCH 8, 2012
16
...
26           CARMEN J. GARROD, CSR NO. 4009
27                OFFICIAL COURT REPORTER
28
```

COPYING RESTRICTED, SECTION 69954 (D) GOV. CODE

```
 1  TO BE THE --
 2      A.   328?
 3      Q.   328.  THE BINDER WE'RE LOOKING AT, BUT THE VERY
 4  BEGINNING.
 5           FOR IDENTIFICATION, YOUR HONOR, 328 IS R. POST
 6  INTERNATIONAL'S BUSINESS PLAN, SERIES F, PREFERRED STOCK
 7  FINANCING MEMORANDUM DATED FEBRUARY 1, 2006.
 8      THE COURT:  BE SO MARKED.
 9
10           (MARKED FOR IDENTIFICATION,
11           ^DEFENSE EXH. NO. 328, FINANCING
12           MEMORANDUM DATED 2/1/06.)
13
14      Q.   BY MR. BEN-ZVI:  CAN YOU TELL US WHAT EXHIBIT
15  328 IS?
16      A.   IT'S A SERIES F.  IT'S A FINANCING MEMORANDUM
17  OF THE COMPANY FROM FEBRUARY 2006.
18      Q.   AND THIS WAS ISSUED IN OR AROUND FEBRUARY 2006;
19  CORRECT?
20      A.   YES.
21      Q.   A COUPLE OF MONTHS BEFORE THE FORFEITURE?
22      A.   YES.
23      Q.   IF I COULD ASK YOU TO TURN TO THE
24  CAPITALIZATION SUMMARY THAT'S ON PAGE 46 OF THIS
25  DOCUMENT.
26      A.   YES.
27      Q.   AND IT SHOWS HOW MANY COMMON STOCK SHARES WERE
28  ISSUED AND OUTSTANDING?
```

```
 1      A.   YES.
 2      Q.   WHAT'S THE NUMBER THAT IT SHOWS FOR COMMON
 3  STOCK ISSUED AND OUTSTANDING?
 4      A.   21.7 MILLION.
 5      Q.   KEEP YOUR FINGER ON THAT PAGE, IF YOU WOULD,
 6  AND TURN TO THE NEXT EXHIBIT WHICH IS 329.
 7           YOUR HONOR, FOR IDENTIFICATION, 329 IS AN
 8  R. POST INTERNATIONAL CONFIDENTIAL BUSINESS PLAN
 9  PREFERRED SHARE FINANCING MEMORANDUM DATED OCTOBER 2006.
10           CAN YOU TELL US, MR. KHAN, WHAT EXHIBIT 329
11  IS?
12      A.   IT'S A FINANCING MEMORANDUM FROM OCTOBER 2006.
13      Q.   IF I COULD GET YOU TO TURN TO PAGE 57 OF
14  EXHIBIT 329.  THAT'S THE PAGE THAT SHOWS THE
15  CAPITALIZATION SUMMARY, ISN'T THAT RIGHT?
16      A.   YES.
17      Q.   CAN YOU TELL ME HOW MANY COMMON SHARES ISSUED
18  AND OUTSTANDING ARE SHOWN AS OF OCTOBER 2006?
19      A.   15.6 MILLION.
20      Q.   CAN DO YOU THE MATH IN YOUR HEAD ON THAT OR
21  WOULD YOU LIKE ME TO GET YOU A CALCULATOR?
22      A.   IT'S ROUGHLY 6 MILLION SHARES LESS.
23      Q.   COMPARED TO THE CAPITALIZATION SUMMARY SHOWN IN
24  FEBRUARY 2006 THERE IS SOME 6 PLUS MILLION SHARES THAT
25  ARE NO LONGER SHOWN AS ISSUED; CORRECT?
26      A.   YES.
27      Q.   DOES THIS REFER TO THE FORFEITURE OF
28  MR. BARTON'S SHARES AND OTHERS WHO HAD NOT PAID IN
```

```
 1  RESPONSE TO THE CALL?
 2      A.  YES.
 3      Q.  NOW, WHAT HAPPENED TO THE SHARES THAT HAVE
 4  PREVIOUSLY BEEN SHOWN AS HAVING BEEN ISSUED TO
 5  MR. BARTON?
 6      A.  THEY RETURNED TO TREASURY.
 7      Q.  WHAT DOES THAT MEAN?
 8      A.  THAT MEANS THAT THEY RETURNED TO THE POOL OF
 9  SHARES THAT CAN BE SOLD AND ISSUED AS STOCK OPTIONS.
10      Q.  WERE THE SHARES THAT HAD PREVIOUSLY BEEN
11  REPORTED AND ISSUED TO MR. BARTON CANCELLED?
12      A.  NO, THEY WERE FORFEITED AND RETURNED TO
13  TREASURY.
14      Q.  WHAT'S THE DIFFERENCE BETWEEN CANCELLATION AND
15  FORFEITURE IN THIS CONTEXT?
16      A.  CANCELLATION ARE THOSE SHARES THAT WE CANCELLED
17  FROM THE AUTHORIZED SHARE POOL.  FORFEIT WOULD BE --
18  FORFEIT RETURN TO TREASURY WOULD MEAN THAT THOSE SHARES
19  ARE NOT ELIMINATED FROM THE AUTHORIZED SHARE CAPITAL
20  POOL.
21      Q.  SO IF SHARES HAVE BEEN CANCELLED, THEY CANNOT
22  BE ISSUED TO ANYONE ELSE; CORRECT?
23      A.  CORRECT.
24      Q.  IF THEY HAD BEEN FORFEITED AND RETURNED TO
25  TREASURY THEY COULD BE ISSUED AGAIN?
26      A.  YES.
27      Q.  GENERALLY SPEAKING -- LET'S FOCUS ON
28  EXHIBIT 329.  WHAT ARE THESE FINANCING MEMORANDA?
```

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

9600 Topanga Canyon Boulevard, Suite 200, Chatsworth, California 91311

A true and correct copy of the foregoing document entitled (*specify*): **CREDITOR KENNETH BARTON'S OBJECTION TO DEBTOR'S "NEW MATTER" REPLY AND BARTON'S SUR-REPLY THERETO; MEMORANDUM OF POINTS AND AUTHORITIES** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) __11/1/2013__, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Henry Ben-Zvi on behalf of Defendant RMail Limited/ RPost Communications, Ltd./ RPost International Limited - rachel@ben-zvilaw.com

Nancy K Curry (TR) on behalf of Trustee Nancy K Curry (TR) ecfnc@trustee13.com

Nicolas A Daluiso on behalf of Creditor BANK OF AMERICA, N.A. - ndaluiso@robinsontait.com, ssears@robinsontait.com; mhunter@robinsontait.com; ncarson@robinsontait.com; kshenefield@robinsontait.com

Lewis R Landau on behalf of Debtor Terrance Alexander Tomkow LLandau@HorganRosen.com

Lewis R Landau on behalf of Interested Party Zafar David Khan LLandau@HorganRosen.com

Bonni S Mantovani on behalf of Creditor BANK OF AMERICA, N.A. cmartin@pralc.com

Jeannette Marsala on behalf of Creditor BANK OF AMERICA, N.A. jmarsala@pralc.com, cmartin@pralc.com

Danette Murrell on behalf of Creditor BANK OF AMERICA, N.A. danette.murrell@bankofamerica.com

Cassandra J Richey on behalf of Interested Party Bank of America, N.A., c/o Prober & Raphael - cmartin@pralc.com

Scott E Shapiro, Esq on behalf of Creditor Thomas Burke/ Plaintiff 126736 Canada, Inc./ Plaintiff George Martin - scott.e.shapiro.esq@gmail.com

Kquemura Smith on behalf of Creditor BANK OF AMERICA, N.A. kquemura.r.smith@bankofamerica.com

Kendrick D Stribling on behalf of Creditor BANK OF AMERICA, N.A. kendrick.stribling@bankofamerica.com

United States Trustee (LA) - ustpregion16.la.ecf@usdoj.gov

Kristin S Webb on behalf of Interested Party Courtesy NEF bknotice@rcolegal.com

Portia Worsham on behalf of Creditor BANK OF AMERICA, N.A. portia.worsham@bankofamerica.com

Philip A Zampiello on behalf of Creditor Kenneth Barton philipz@mkzlaw.com, PatrickM@mkzlaw.com; MichaelK@mkzlaw.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                F 9013-3.1.PROOF.SERVICE

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) ___11/1/13___, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

<u>Via Federal Express:</u>
Hon. Julia W. Brand,
U.S. Bankruptcy Court, Roybal Federal Building,
255 E. Temple Street, Suite 1382 / Courtroom 1375
Los Angeles, CA 90012-3332

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| November 1, 2013 | Vanessa Bravo | /s/ Vanessa Bravo |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                                                **F 9013-3.1.PROOF.SERVICE**